UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARRELL HUNTER,

               Petitioner,

     v.

SCOTT KERNAN,
Director, California Department
of Corrections,

               Respondent.

Case No. CV-18-2627-CRB

**ORDER DENYING PETITION FOR
A WRIT OF HABEAS CORPUS**

Petitioner, a state prisoner incarcerated at the San Francisco County Jail, seeks a writ of habeas corpus under 28 U.S.C. § 2254 invalidating a conviction from San Francisco County Superior Court. In an order filed on July 9, 2018, this Court found that the petition appears to state cognizable claims for relief under § 2254, when liberally construed, and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause (dkt. 23) and Petitioner has filed a traverse (dkt. 24).

## BACKGROUND

A.    <u>Statement of the Case</u>

On July 12, 2014, Petitioner was charged by information with making a criminal threat. He entered a plea of not guilty. Pet. (dkt. 1) Ex. C at 2. Trial commenced on September 2, 2014. <u>Id</u>. On September 3 and 4, the prosecution presented one witness and the defense presented two, one of whom was Petitioner's former girlfriend. <u>Id</u>. During cross-examination of Petitioner's former girlfriend, Petitioner asked to use the rest room

and then waived his appearance for the remainder of the cross-examination.[1] Id. Petitioner was present for the testimony of the second defense witness, after which the parties stated that there were no further witnesses, and the jury was dismissed for the weekend. Id. Petitioner waived his right to be present as the court and counsel reviewed jury instructions, and he left for the weekend with instructions to return at 9:15 a.m. on September 8. Id.

At 10 a.m. on September 8, the trial court told counsel that Petitioner had not yet appeared, that there was "some indication he's on his way," and that the court would not delay further. Id. At 10:15 a.m., the court admonished the jury that they were not to speculate about Petitioner's absence or consider it for any purpose, then proceeded with instructions and counsels' closing arguments. Id. With Petitioner still absent at the end of the morning session, the court ordered bail forfeited and a bench warrant issued. Id. Petitioner was not present after the lunch break and the court proceeded with the remaining closing arguments and, at 2:42 p.m., sent the jury to begin deliberations. Id.

After the jury departed, defense counsel moved for a mistrial based on alleged prosecutorial misconduct in the prosecutor's rebuttal argument. Id. Ex. C at 3. As the court began to respond, Petitioner—having returned at some point that is not documented in the record—interjected and the following exchange occurred:

> "[Petitioner]: Why you all keep playing with me? Especially you. You just stand up, my boy.
>
> "[Defense counsel]: Calm down. You're crazy. You better back off.
>
> "[Petitioner]: You piece of shit. You're a piece of shit. That's what you are.
>
> "[Defense counsel]: You need to calm down.

---

[1] The conclusion that Petitioner waived his appearance is based on the California Court of Appeal's statement of the case. People v. Hunter, No. A144413, 2018 WL 360089, at *13–14 (Cal. Ct. App. Jan 11, 2018), reh'g denied (Feb. 1, 2018), review denied (Apr. 11, 2018). The Petitioner's memorandum did not include the trial court's transcript. Therefore, the Court relies on the California Court of Appeal's recitation of the facts.

> "[Petitioner]:  You need to understand what you are.
>
> "The Court:  Mr. Hunter, why don't we have you step outside and calm down just a little bit, and then we can talk.
>
> "[Petitioner]:  Think I don't know what you about, bitch."

Id.

The court subsequently denied the mistrial motion.  Id.  Just over an hour later, the jury returned its verdict, finding Petitioner guilty of making a criminal threat.  Id.  A few minutes after the jurors were discharged, the court went back on the record, explaining that one of the jurors had expressed concern about the possibility of having contact with appellant due to a past experience of encountering and being threatened by a different defendant in a case for which she had been a juror.  Id.  The court and counsel questioned the juror, who stated that her past experience had not affected her deliberations.  Id.

Two days later, on September 10, 2014, Petitioner was arrested on the bench warrant the court previously issued when he failed to appear for trial on September 8.  Id.  Due to his conduct during his arrest on September 10, Petitioner was charged with making threats to an executive officer and misdemeanor resisting arrest.  Id. Ex. C at 3–4.  On September 11, defense counsel declared a doubt as to Petitioner's competence based on his behavior and statements during trial.  Id. Ex. C at 4.  At that point, proceedings were suspended, Dr. Jonathan French was appointed to evaluate Petitioner, and the case was continued.  Id.

Dr. French evaluated Petitioner on October 12, 2014 and filed his report on October 15, 2014, finding that Petitioner was presently incompetent but noting that it was a close case and that the court might wish to obtain a second opinion.  Id.

After Dr. French's evaluation, Petitioner requested a Marsden hearing, at which Petitioner's counsel was relieved.  Id. Ex. A at 3.  On October 20, 2014, attorney Cheryl Rich was appointed to represent petitioner.  Id. Ex. C at 4.  The case was continued for a second competency evaluation by Dr. Lisa Jeko.  Id.  Dr. Jeko evaluated appellant on November 15, 2014 and found him competent.  Id.

On December 3, 2014, the court found Petitioner competent and reinstated criminal

proceedings.  Id.

On January 21, 2015, Petitioner filed a motion for a new trial, arguing that a hearing was required to determine whether (1) Petitioner was competent during the trial; (2) Petitioner's absence from court was due to mental illness; (3) trial counsel was ineffective; (4) a juror was improperly influenced by a prior jury experience; and (5) there was insufficient evidence appellant made a criminal threat.  Id.

On February 5, 2015, the court denied the motion for a new trial.  Id.  The court sentenced Petitioner to three years in state prison, suspended execution of the sentence, placed Petitioner on supervised probation for five years, ordered him to serve 217 days in county jail with credit for having served those 217 days, and ordered him to complete all services required as directed by the probation department.  Id.

On February 24, 2015, Petitioner timely filed a direct appeal.  Id. Ex. C at 5.  He raised four grounds: (1) his Federal and California constitutional rights to due process and a fair trial were violated when the Superior Court did not suspend the trial and conduct a competency examination, and his trial attorney was ineffective for failing to request the competency examination; (2) his Federal and California constitutional rights to due process and a fair trial were violated when the Superior Court denied his motion for a new trial due to his incompetence during the trial; (3) his Federal and California constitutional rights to due process and a fair trial were violated when the Superior Court continued the trial in his absence; and (4) his Federal and California constitutional rights to due process and a fair trial were violated because of juror misconduct during the trial.  Id. at 4–5.

On February 24, 2016, Petitioner filed a petition for writ of habeas corpus in the superior court.  Id. at 5.  The petition claimed that Petitioner had been denied effective assistance of counsel because his trial attorney did not investigate and present a defense based on his mental state at the time of the Department of Motor Vehicle ("DMV") incident.  Id.

On April 1, 2016, the superior court denied the petition, finding that trial counsel had tactical reasons for not pursuing a mental state defense.  Id.

On July 19, 2017, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. Id. On January 11, 2018, the California Court of Appeal issued a joint written opinion denying both Petitioner's appeal and his habeas corpus petition on the merits. Id. Ex. C at 1.

On February 13, 2018, Petitioner filed a petition for review with the California Supreme Court of both the denial of his direct appeal and the denial of his petition for habeas corpus. Id. at 5.

On April 11, 2018, the California Supreme Court summarily denied review of both Petitioner's direct appeal and his California habeas petition. Id.

B.    Statement of the Facts

The California Court of Appeal summarized the facts of the case as follows:

> In June 2014, Carrie Stanton was working as a manager at the DMV on Fell Street in San Francisco. One of the employees she was responsible for overseeing, Terina Hampton, was appellant's former girlfriend. Hampton, appearing very nervous and agitated, asked Stanton what had happened a couple of weeks before, when appellant came in and asked for Hampton. Stanton replied that he had asked where Hampton was and, when Stanton said she was not there, asked when she would be back; pursuant to the department's policy, Stanton said she could not give him that information and appellant said, "'Okay, Ms. Carrie,'" and left. Hampton said that appellant was "obsessed" with Stanton, angry at her and threatening that he was going to "come and get me," calling her "dyke, bitches." Hampton asked for time off to get a restraining order. Stanton took the threat toward her as "information" and a "warning" and did not think she needed to do anything about it at that time because appellant had never been aggressive toward her; she was more concerned for Hampton's safety.
>
> A few days later, about 9:50 a.m. on June 10, 2014, Stanton was working at window 17 at the DMV, making a telephone call for a customer. She heard a commotion and saw appellant walking in, loudly calling her name and using obscenities. She heard him say, "'Where is that bitch Carrie Stanton? Where is the fucking office manager Carrie Stanton? That fucking lesbian bitch, dyke, bitch, mother-fucking black bitch, where is she? I'm here to carry out martial law. She's been investigated and convicted and this is her last fucking day. This will be her last day. She won't see tomorrow.'" Appellant appeared "angry and aggressive," "walking rapidly, swinging his arms, looking around the office." He made eye contact with Stanton, and she called 911. Stanton felt "very threatened" and felt appellant was "there to do [her] harm"; she was scared because it

5

appeared appellant was "carrying out" the threat Hampton had told her about.

The 911 operator could hear appellant yelling in the background and told Stanton to stay on the phone. As she did so, Stanton saw Hampton trying to calm appellant down. With the assistance of a guard, Hampton was able to get appellant to go outside, still yelling obscenities and trying to turn in Stanton's direction. Seconds after he left, however, appellant returned, again yelling, screaming Stanton's name and calling her "all kinds of names." He came closer to Stanton than he had been before. Hampton came back and as she tried to stop appellant, he "swatt[ed] her away," saying "'[y]ou're assaulting me.'" He picked up an ATM keypad and threw it at Stanton, then threw a fingerprint machine at her. Stanton guessed that the ATM keypad weighed about three to four pounds and the fingerprint machine about 12 to 15 pounds. Appellant then left again, with the aid of a guard. Throughout the incident, appellant repeatedly yelled the same sorts of things she initially described, that Stanton was a "dyke bitch" and a "fake Christian," he was there to "carry out martial law" and "fucking eliminate" Stanton, and that this was her "last fucking day."

The police did not respond to the 911 call, so Stanton later called the California Highway Patrol to report the incident and find out why there had been no response.

Hampton, testifying as a witness for the defense, did not recall what appellant was yelling when he first came into the DMV on June 10. She described appellant yelling at Stanton but the only specific thing she was sure of was that he called Stanton "'Fake Christian bitches'"; he yelled other things as well but she did not pay attention to everything he was yelling because "[h]e was ranting." She did not hear him threaten anyone, but she acknowledged that she did not hear everything he said and that he could have made a threat she did not hear. She saw him throw an ATM machine or a fingerprint machine against the wall.

Hampton testified that prior to June 10, she gave Stanton and the administrative manager a "head's up" that appellant might be "having another episode" and might come in. She denied ever telling Stanton that appellant had threatened her. She asked Stanton what kind of exchange she had had with appellant because he seemed so focused on Stanton and she did not know why; he kept talking about the incident when he asked when Hampton would be back and Stanton said she could not give him this information. In talking with Stanton, she did not use the word "obsessed" but could have said "focused" or "bent"; "[i]t's like he was obsessed." She told Stanton that appellant had come into her home uninvited, "tore up" and made a mess in her apartment, and that she was concerned "because of his mental state, and he kept coming up to the job—to my job trying to see me."

6

> Pedro Bohorquez, who was also working at the DMV on June 10 and did not know appellant, testified that he saw a person walking around, yelling and saying "too many bad words," "profanity" and mentioning a single name, the office manager Stanton. On cross-examination, Bohorquez testified that in the nine years he had worked at the DMV, he had never been so scared, and that he did not hear everything the person said.

People v. Hunter, No. A144413, 2018 WL 360089, at *3–4 (Cal. Ct. App. Jan 11, 2018), reh'g denied (Feb. 1, 2018), review denied (Apr. 11, 2018).

## DISCUSSION

A.    Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application"

inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.      Claims

Petitioner asserts multiple claims for relief, including several violations of his rights to due process and a fair trial under the Fifth and Fourteenth Amendments. Petitioner also alleges the violation of his right to effective assistance of counsel under the Sixth Amendment.

1.      Rights to due process and a fair trial

Petitioner raises four claims for relief based on denial of his rights to due process and a fair trial: (1) that the trial court erred in failing to suspend proceedings and conduct a competency examination during the trial, (2) that the trial court erred in denying his motion for new trial based on incompetence at trial, (3) that the trial court erred in failing to suspend proceedings and hold a hearing to determine if Petitioner's absence was voluntary, and (4) that a juror committed misconduct by failing to disclose certain information during voir dire.

a.      Trial court's failure to suspend proceedings and conduct a competency hearing after Petitioner's conduct on September 8, 2014

Petitioner argues that the trial court erred in not suspending proceedings and conducting a competency examination after Petitioner's outburst in court on September 8, 2014, because the outburst, considered in light of earlier incidents, clearly showed that Petitioner was incompetent. Pet. at 10.

It is well-established that due process requires that a criminal defendant not be tried unless he is competent to stand trial. Godinez v. Moran, 509 U.S. 389, 396 (1993). A defendant is competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. Id.

Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing sua sponte if the court has a good faith doubt concerning the defendant's competence. Pate v. Robinson, 383 U.S. 375, 385 (1966). A good faith doubt about a defendant's competence arises if "'a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.'" Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir. 2010) (quoting Kaplany v. Enomoto, 540 F.2d 975, 983 (9th Cir. 1976) (en banc)).

"In reviewing whether a state trial judge should have conducted a competency hearing, we may consider only the evidence that was before the trial judge." McMurtrey v. Ryan, 539 F.3d 1112, 1119 (9th Cir. 2008); Amaya-Ruiz v. Stewart, 121 F. 3d 486, 489 (9th Cir. 1997); United States v. Lewis, 991 F.2d 524, 527 (9th Cir. 1993). Several factors are relevant to determining whether a hearing is necessary, including evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial. Drope v. Missouri, 420 U.S. 162, 180 (1975).

The California Court of Appeal determined that it was reasonable for the trial court to not suspend proceedings and conduct a competency hearing. The court explained:

> Appellant argues that the nature of the charged offense raised a suspicion he was suffering from a mental illness, noting that by the time of the September 8 outburst, the court had heard testimony about appellant's "bizarre behavior" at the DMV office and Hampton's testimony that she was concerned about appellant's mental state in June 2014. Additionally, appellant points to his statements at the preliminary hearing that Hampton was being "brainwashed" by Stanton and that "hell awaited non-believers" as raising a suspicion of incompetence. He argues that his inability to watch Hampton testify and his unexplained failure to appear for the morning session on

September 8 indicated he was beginning to suffer a psychotic breakdown due to the stress of trial, and that his outburst when he did appear on September 8, in which he called his attorney "boy" and the judge a "bitch" was evidence he was in the midst of a psychotic breakdown. Appellant comments that his attorney had "good reason" for calling him "crazy" during the outburst.

Appellant argues his case is similar to People v. Murdoch (2011) 194 Cal.App.4th 230, 237, in that it involved more than "mere bizarre statements or actions taken in isolation." There, two doctors previously appointed to examine the defendant's competence previously had found he suffered from a serious mental illness and was competent at that time due to medication he had been given, but that he had since refused to take the medication and could decompensate and become incompetent if he continued to refuse it. (Id. at p. 233.) The defendant later successfully moved to represent himself, told the court his defense to the charges of felony assault was that the victim was not a human being and on cross-examination asked the victim only one question—"Can you shrug your shoulders like this?" According to the defendant, the victim lacked shoulder blades, which are "'symbolic of angelic beings.'" (Ibid.) The Murdoch court concluded that the defendant's statements, together with the experts' reports, provided substantial evidence demonstrating a reasonable doubt as to whether the defendant had "decompensated and become incompetent as the experts had warned." (Id. at p. 238.)

In the present case, there was no prior competency hearing and no expert warning that appellant suffered from a serious mental illness, was competent only due to medication and was likely to decompensate because he had stopped taking medication. Nor did any of the statements or behavior appellant points to indicate a lack of a "'present ability to consult with his lawyer with a reasonable degree of rational understanding'" or lack of a "'rational'" and "'factual understanding'" of the proceedings. (Sattiewhite, supra, 59 Cal.4th at p. 464.)

Appellant's behavior at the DMV certainly demonstrated extreme emotion and anger, but this is not necessarily an indication he suffered from a mental illness affecting his "ability to understand the trial proceedings or to assist or cooperate with counsel." (Lewis, supra, 43 Cal.4th 415, 525.) In denying appellant's motion for new trial, the trial court detailed its reasons for concluding, based on its observations at trial, that while appellant was at times angry, agitated and upset, "there was never any indication he was incompetent to stand trial." As the court noted, a person can suffer from a mental disorder but remain able to understand the proceedings and assist in his or her defense. (See People v. Welch (1999) 20 Cal.4th 701, 742, overruled on another ground in People v. Blakeley (2000) 23 Cal.4th 82, 90, [more needed to raise doubt than "'psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with

10

little reference to defendant's ability to assist in his own defense'"]; People v. Laudermilk (1967) 67 Cal.2d 272, 285.) The court stated that appellant was "very engaged with his attorney," "very engaged in his jury selection process," "clear about what was going on in the proceedings" and "aware of every aspect of the trial," and that he "followed my instructions," "was clear enough to ask me when he needed to leave the room or he needed a break," and "would get upset but then he would calm down and he comported himself." Given the trial court's observations, it is clear that the facts of appellant's offense did not provide substantial evidence of incompetence. Hampton's reference to having had a concern about appellant's mental state prior to the offense was similarly insufficient, as were appellant's statements at the preliminary hearing.

Nor do we have a basis for rejecting the trial court's conclusion on the basis of appellant's inability to watch Hampton testify. A defendant's preference to absent himself from a portion of trial is not necessarily indicative of incompetence. (People v. Davis (1995) 10 Cal.4th 463, 526 & fn. 23 [defendant explained decision not to be present in the courtroom as attempt to "avoid problems" because it was so difficult to sit "listening to lies about me" with a straight face].) The trial court here specifically addressed this point in its comments after the new trial motion: "There's no question that there were times during the trial when [appellant] was agitated. He was upset. He had difficulty particularly hearing his former girlfriend testify. That was hard on him, and he did ask to be excused for a short time, but he came right back." The court then continued with its observations about appellant being "very engaged" in the trial, as indicated above. In short, the trial court was aware that appellant was having an emotional reaction to the testimony but saw no indication he was unable to understand the proceedings and assist in his defense. The record does not suggest appellant's response to Hampton's testimony was indicative of incompetence. Appellant interrupted the testimony, saying "I gotta use the rest room. I gotta use the restroom. Continue." The court told him they would wait for him to return and appellant responded, "Yes, ma'am. Thank you." After a brief break in which the court conferred with counsel, when the court told appellant it understood he wanted to waive his appearance for the remainder of Hampton's testimony and asked if this was correct, appellant replied affirmatively, and when the court instructed appellant not to go too far so there would be no delay when the witness was done testifying, he replied, "Okay."

Appellant's failure to appear in court on the morning of September 8 and outburst when he did appear were also insufficient to constitute evidence of incompetence as a matter of law. The trial court commented upon these points as well: "Now, there's no question that at the end, after the jury had begun their deliberations, that [appellant] started to absent himself a little bit more. He was harder to get into court; and at

one point, he didn't appear though he had been ordered to. And he was quite agitated and upset particularly with his attorney when he came back. [¶] Did that mean he was incompetent at times? There was absolutely nothing in his behavior to indicate to this court—and frankly to [defense counsel] because he certainly didn't declare a doubt at that point—to indicate that [appellant] was not able to assist in his defense, that he was not competent. [¶] Was he in mental distress? Could be. He was clearly angry. He was clearly upset. Whether or not that—did he seem to the extent that he was so out of control or having a mental breakdown? No, absolutely not." The record thus indicates that appellant exhibited anger, agitation, perhaps a lack of impulse control in this last outburst. But none of this rose to the level of a "'showing of "incompetence" that is "substantial" as a matter of law'" (Sattiewhite, supra, 59 Cal.4th at p. 465, quoting Mai, supra, 57 Cal.4th at p. 1033) so as to justify us in rejecting the trial court's considered evaluation of appellant's conduct at trial.

Hunter, No. A144413, 2018 WL 360089, at *5–7.

The California Court of Appeal reasonably determined that the trial court was not constitutionally required to hold a competency hearing mid-trial. When considering a claim that a state trial court should have held a competency hearing, a federal habeas court considers only the information that was before the state trial court. See Amaya-Ruiz, 121 F.3d at 489. Moreover, a state trial court's finding that a competency hearing was not required is entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1); Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam).

Courts have found sufficient evidence of incompetence in two scenarios: (1) where the defendant has a history of severe mental illness, and (2) where the defendant's behavior is extremely irrational and erratic throughout the trial. See Odle v. Woodford, 238 F.3d 1084, 1087–89 (9th Cir. 2001) (sufficient evidence of incompetence found where defendant had a massive temporal lobe lobectomy followed by severe personality change and series of psychiatric hospitalizations and attempted suicide while in jail); Tillery v. Eyman, 492 F.2d 1056, 1057–58 (9th Cir. 1974) (sufficient evidence of incompetence found where defendant displayed erratic and irrational behavior throughout the course of the trial, including screaming, laughing at the jury, disrobing in the courtroom, and butting his head through a glass window).

In the instant case, as the state court noted, Petitioner's behavior at the DMV and in

court demonstrated extreme emotion and anger, but was not so bizarre as to suggest that he was unable to understand the basic functions of the trial process and assist in his defense. Nor did the trial court have access to any documentation of severe mental illness like the court did in Odle, see Odle, 238 F.3d at 1087–89. Cf. People v. Murdoch,194 Cal.App.4th 230, 237 (2011) (finding that a competency hearing was warranted where two doctors previously concluded that defendant was seriously mentally ill and defendant engaged in bizarre behavior). Petitioner relies on expert evaluations conducted after the trial to argue that the trial court's failure to hold a competency hearing was unreasonable, Pet. at 16–17, but this Court may only consider the evidence that was actually before the trial judge. See Odle, 238 F.3d at 1087. Petitioner points to defense counsel calling Petitioner "crazy" after the outburst on September 8, 2014, Pet. at 16, but that spontaneous reaction, in the jury's absence, is not a psychiatric evaluation. Given the information available to the trial court on September 8, 2014, it was reasonable for the California Court of Appeal to conclude that a competency hearing was unnecessary.

b. Trial court's denial of Petitioner's motion for a new trial

Petitioner argues that his rights to due process and a fair trial were violated when the trial court denied Petitioner's motion for a new trial based on his incompetence during trial. Pet. at 18. Petitioner also argues that the that the reports authored by the two clinical psychologists who examined him shortly after the trial, combined with his behavior before and during trial, triggered a need for a full competency hearing during trial. Id.

The California Court of Appeal noted that the difference between the information available to the trial court when it denied the motion for a new trial compared to when it decided against holding a competency hearing was the addition of the two medical reports by Dr. French and Dr. Jeko. Pet. Ex. C at 19. The California Court of Appeal reasoned that the presence of the reports did not compel a different outcome "because neither addressed [Petitioner's] competence during the trial." Id. (emphasis in original). The California Court of Appeal distinguished the present case from those, cited by Petitioner, in which the defendant's competence was evaluated with respect to upcoming proceedings:

13

Here, the psychologists evaluated appellant's competence at the time of the evaluations, but the relevant question was appellant's competence during the trial that had previously concluded. The reports did not address this question and therefore did not constitute substantial evidence that appellant was incompetent during trial.

United States v. Mason (4th Cir. 1995) 52 F.3d 1286, which appellant views as similar to his case, differs in the same critical respect. The defendant in Mason was convicted in the first phase of trial and, while released pending the second (forfeiture) phase the next day, attempted suicide. (Id. at p. 1287.) After a psychological evaluation concluded the defendant was suffering from a mental disease or defect requiring care and treatment, the district court held a hearing to determine his competence to proceed with the forfeiture phase and sentencing but denied motions for new trial based on alleged incompetence during the first phase of trial and for a hearing to determine competence at the first phase. Finding the district court abused its discretion, the Mason court noted that the psychological report indicated the defendant's mood disturbances had existed for up to two years and he had had severe alcohol abuse problems for the past few years, and, according to the affidavits of counsel, the defendant's treating physicians believed he was incompetent during the first phase of trial. (Id. at pp. 1290-1293.) Thus, while Mason was like the present case in that it involved a motion for a retrospective competency hearing, the medical opinions in that case directly addressed the issue of competency at the time of the prior trial proceedings while the reports here addressed competency at the time of the evaluation without discussing competency at the past trial.

Appellant assumes that the evidence of his mental condition on September 10, described in Dr. French's report, established that he was incompetent on September 8. As the trial court recognized, however, French's report "relate[d] back" only to the time appellant came into custody on the bench warrant and defense counsel declared a doubt.

Hunter, No. A144413, 2018 WL 360089, at *11.

Petitioner's motion for a new trial turned on whether Petitioner was incompetent during trial. The California Court of Appeal found that the only new information available to the trial court when it considered the motion were the two medical reports authored by Dr. French and Dr. Jeko. See id. But the reports offered contrary conclusions, and neither discussed Petitioner's competence during trial. See id. at 10.

This Court has already agreed with the California Court of Appeal's conclusion that Petitioner's behavior at trial did not raise a substantial doubt as to his competence as a

matter of law.  See supra Part B(1)(c).  Because federal habeas review is limited to whether the state court decision was contrary to clear and convincing evidence, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)), the present question is thus whether the two additional reports compelled the conclusion that Petitioner was incompetent during trial.  They did not.  Two opposing medical conclusions cannot be interpreted as constituting clear and convincing evidence.

Moreover, neither report augmented the information regarding Petitioner's competence at trial because a determination of present incompetence does not necessarily evince that the defendant was incompetent prior to that determination.  See People v. Smith, 110 Cal.App.4th 492, 497, 505 (2003).  Here, Dr. French and Dr. Jeko evaluated Petitioner one and two months, respectively, after the trial.  See Hunter, No. A144413, 2018 WL 360089, at *2.  It was reasonable for the California Court of Appeal to defer to the trial court's determination that a new trial was not warranted because the two after-the-fact reports did not constitute clear and convincing evidence of Petitioner's incompetence at trial nor did they attempt to opine as to his mental state at trial.

### c.  Trial court's proceeding without determining if Petitioner's absence was voluntary

Petitioner argues that the trial court erred in commencing proceedings on the morning of September 8, 2014, without determining whether his absence was voluntary, and in continuing the afternoon session after appellant left the courtroom following his outburst at defense counsel and the trial court.  Pet. at 20.  Petitioner further contends that this error was not harmless.  Id. at 21

The Supreme Court has recognized that "the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant."  Rushen v. Spain, 464 U.S. 114, 117 (1983).  This right derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments.  Campbell v. Wood, 18 F.3d 662, 671 (9th Cir. 1994) (en banc).  The Confrontation Clause

protects a defendant's right to face his accusers and applies to every stage of a trial. See Illinois v. Allen, 397 U.S. 337, 338 (1970). The constitutional right to due process further protects a defendant's right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987).

A defendant can waive the right to personal presence if he does so voluntarily, knowingly, and intelligently. Campbell v. Wood, 18 F.3d 662, 671 (9th Cir. 1994) (en banc). Such a waiver need not be express; it may be implied, e.g., by a showing that the defendant "knowingly and voluntarily fail[ed] to appear for trial." United States v. Houtchens, 926 F.2d 824, 827 (9th Cir. 1991). A defendant must personally waive his right to be present; that counsel is notified is irrelevant. See Turner v. Marshall, 63 F.3d 807, 815 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).

The right to be present at all critical stages of trial, like most constitutional rights, is subject to harmless error analysis "'unless the deprivation, by its very nature, cannot be harmless.'" Campbell v. Rice, 408 F.3d 1166, 1172 (9th Cir. 2005) (en banc) (quoting Rushden v. Spain, 464 U.S. 114, 117 n.2 (1983) (per curiam)). For example, a court refused to apply harmless error analysis where a defendant was absent during sentencing because the absence so undermined the integrity of the trial process. See Hays v. Arave, 977 F.2d 475, 479–81 (9th Cir. 1992). However, an en banc panel overturned a Ninth Circuit panel's holding that it was structural error for a capital defendant to be absent when the jury delivered the verdict. Rice v. Wood, 77 F.3d 1138, 1140–44 (9th Cir. 1996) (en banc).

Although it is a close question, it was reasonable for the California Court of Appeal to conclude that Petitioner's absences were voluntary, based on an implied waiver. See Houtchens, 926 F.2d at 827. Prior to September 8, 2014, Petitioner expressly waived his presence twice. Pet. Ex. C at 2. Further, when Petitioner expressly waived his right to be present for the trial court's discussion of jury instructions with counsel, Petitioner "clearly

indicated his understanding of the court's instruction to return at 9:15 a.m. on . . . September 8." Id. at 24. Petitioner argues that it was unreasonable to conclude that his absence was voluntary, because the trial court knew that Petitioner had a history of mental illness due to Petitioner's former girlfriend's testimony and Petitioner's agitation during that same testimony. Pet. at 20–21. However, it is reasonable to conclude that the trial court was unaware of any history of mental illness, because Petitioner's former girlfriend never described Petitioner as suffering from mental illness, and the court interpreted appellant's reaction to his former girlfriend's testimony as the result of strong emotion. Id. at 25.

Petitioner later submitted, in January 2015, a declaration stating that his absence was due to a mental breakdown, id. at 25, but this post hoc explanation is not sufficient to find that the California Court of Appeal was unreasonable. The trial court had observed Petitioner voluntarily absenting himself during witness testimony and deliberations over jury instructions in addition to his outburst on September 8, and saw no reason to question his competence. See id. at 26. Indeed, the trial court's subsequent comments in denying the motion for a new trial reveal that the court viewed Petitioner's actions as a function of emotion, rather than incompetence. See id. at 24–25. It was thus reasonable for the California Court of Appeal, when reviewing this record, to find that the trial court could reasonably conclude that petitioner's absence was voluntary.

d. Juror's failure to disclose information about her prior jury experience

Petitioner argues that his rights to due process and a fair trial were violated by a juror's failure to disclose "material information" regarding past jury service. Pet. at 22.

The Sixth Amendment guarantees a criminal defendant a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523–24 (9th Cir. 1990) (internal quotation marks omitted). However, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation."

Smith v. Phillips, 455 U.S. 209, 217 (1982). "The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Id. (emphasis in original). Due process only means "a jury capable and willing to decide the case solely on the evidence before it," and a trial judge "watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Id.

A petitioner may obtain a new trial because a juror failed to answer a voir dire question correctly by showing: (1) that the juror failed to answer honestly a voir dire question, and (2) that this undermined the impartiality of the petitioner's jury. Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (en banc).

During voir dire, Juror No. 6 disclosed that she had served as a juror in a criminal trial over 30 years before and that the jury had reached a verdict. Pet. at 24. When later asked by the trial court if any juror thought that he or she could not uphold the important constitutional principles at issue in a trial, including the presumption of innocence, Juror No. 6 did not raise her hand. Id. Juror No. 6 was selected as a juror and returned a verdict of guilty along with the other jurors. A few minutes after the jury was discharged, the trial court went back on the record to explain that one of the jurors expressed feeling nervous about the possibility of having contact with Petitioner in the future. Id. The juror was concerned that she not be identified. Id. Juror No. 6 then revealed that she had previously served on a jury in a homicide case "in which the defendant lived very close to her and they would run into each other in the neighborhood because he was released on bail." Hunter, No. A144413, 2018 WL 360089, at *16. Juror No. 6 stated that she had not shared that information with any other jurors, focused only on the evidence presented and not on her prior experience, and that when she heard the nature of the present case during jury selection, her prior experience was not a concern for her. Id.

Petitioner contends that the record shows that Juror No. 6 committed misconduct when she failed to raise her hand when asked by the trial court if she thought she could not

18

uphold the important constitutional principles at issue in a trial, including the presumption of innocence.  Pet. at 24.  The California Court of Appeal rejected Petitioner's argument, finding that there was no evidence of nondisclosure in the face of specific questioning and that the trial court found the juror credible when she stated that she had not been concerned about her past experience when she heard the nature of the present case during voir dire. Hunter, No. A144413, 2018 WL 360089, at *18.

It was reasonable for the California Court of Appeal to conclude that Juror No. 6 did not fail to disclose information in response to a voir dire question because she was not asked about her post-trial experiences with the defendant in the prior case.  A lay juror's failure to reveal information in response to an arguably ambiguous question does not constitute intentional concealment warranting a new trial.  See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 552 n.3, 555 (1984) (finding no intentional concealment when a juror asked whether any family members had sustained severe injury that resulted in "disability or prolonged pain and suffering," did not disclose that his son had broken his leg as a result of an exploding tire, due to his "mistaken though honest" belief that the accident was not serious); Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007) (en banc) (finding no intentional concealment when a juror, asked whether any family members had been crime victims, stated that his wife had been "assaulted and beaten," but did not expressly say she had been raped, because he assumed parties would understand "assault" encompassed a sexual assault).  During voir dire, Juror No. 6 was asked whether she had prior jury experience, whether that jury returned a verdict, and whether she was the foreperson.  Hunter, No. A144413, 2018 WL 360089, at *16.  Juror No. 6 answered those questions and was not asked any additional questions about her prior jury service.  Id.  It was reasonable for the California Court of Appeal to find that Juror No. 6 did not intentionally conceal information because the questioning was not sufficiently specific to elicit additional information regarding her prior jury service.

Moreover, it was reasonable for the California Court of Appeal to accept the trial court's factual finding that the juror was credible when she stated that she was not biased

by her prior jury experience because a trial court's factual finding is presumed correct under § 2254(e)(1) unless, unlike here, it has been rebutted by clear and convincing evidence. Credibility findings are particularly insulated from review because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). Accordingly, it was reasonable for the California Court of Appeal to find that Juror No. 6 did not engage in misconduct or nondisclosure and reject Petitioner's allegations.

2. Ineffective Assistance of Counsel at Trial

Petitioner raises two claims for relief based on ineffective assistance of counsel at trial: (a) trial counsel's failure to move for a mistrial and declare a doubt as to Petitioner's competency and (b) trial counsel's failure to investigate and present a diminished actuality defense at trial. Pet. at 26.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). A meritorious claim for ineffective assistance lies where counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

To meet Strickland's first prong, a petitioner must show that counsel's performance was deficient; that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. To do this, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of a counsel's performance is highly deferential; "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must

1   overcome the presumption that, under the circumstances, the challenged action 'might be

2   considered sound trial strategy.'" <u>Strickland</u>, 466 U.S. at 689 (citation omitted).  The

3   purpose of the Sixth Amendment's effective assistance guarantee is not to improve the

4   quality of legal representation, but simply to ensure that criminal defendants receive a fair

5   trial.  <u>Id.</u>

6       <u>Strickland</u>'s second prong requires a petitioner to show that counsel's errors were so

7   serious as to deprive the defendant of a fair trial, in which the result is reliable.  <u>Strickland</u>,

8   466 U.S. at 688.  To show prejudice, a petitioner must demonstrate that there is a

9   reasonable probability that, but for counsel's unprofessional errors, the result of the

10  proceeding would have been different; a reasonable probability is a probability sufficient

11  to undermine confidence in the outcome.  <u>Id.</u> at 694.  Where a petitioner is challenging his

12  conviction, the appropriate question is "'whether there is a reasonable probability that,

13  absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'"

14  <u>Luna v. Cambra</u>, 306 F.3d 954, 961 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. 695).

15      When analyzing ineffective assistance of counsel claims under § 2254(d), a federal

16  habeas court employs a doubly deferential standard.  <u>Cullen v. Pinholster</u>, 563 U.S. 170,

17  189–90 (2011); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 112 (2009).  For a federal habeas

18  court reviewing a state court's determination, the pivotal question is not whether defense

19  counsel's performance fell below the <u>Strickland</u> standard, but whether the state court's

20  application of the <u>Strickland</u> standard to that performance was reasonable.  <u>Harrington v.</u>

21  <u>Richter</u>, 562 U.S. 86, 100–01 (2011).

22          a.  <u>Trial counsel's failure to declare a doubt as to Petitioner's competence</u>

23      Petitioner claims that his trial counsel was ineffective for failing to move for a

24  mistrial and declare a doubt as to Petitioner's competency.  Pet. at 26.  Petitioner's claim

25  fails because he has not shown that trial counsel's failure to declare a doubt as to

26  Petitioner's competency was unreasonable, or that he was prejudiced by it.

27      To succeed under the first prong of the <u>Strickland</u> ineffective assistance of counsel

28  standard, Petitioner must show that his trial counsel's performance was deficient.

Petitioner has not shown that counsel's conduct fell outside of the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. As previously discussed, there was not substantial evidence that Petitioner was incompetent on September 8. See Hunter, No. A144413, 2018 WL 360089, at *5–7. This is substantiated by the trial court's subsequent statement that "[t]here was absolutely nothing in his behavior to indicate . . . that [Petitioner] was not able to assist in his defense, that he was not competent," including on September 8, when he was "clearly angry," "clearly upset," and maybe "in mental distress," but "absolutely not" "to the extent that he was so out of control or having a mental breakdown." Id. at 7. The trial court's observations show that even if trial counsel had declared a doubt as to appellant's competence on September 8, the trial court would not have suspended proceedings because the trial judge did not believe Petitioner was incompetent. Under the circumstances, it is reasonable that an attorney in Petitioner's trial counsel's position would believe that declaring a doubt would prove fruitless.

Moreover, substantial deference is owed to trial counsel's decision not to declare a doubt as to Petitioner's competency, because "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." Medina v. California, 505 U.S. 437, 450 (1992); accord Boyde v. Brown, 404 F.3d 1159, 1167 (9th Cir. 2005) ("perhaps the most telling evidence that [defendant] was competent at trial is that neither defense counsel—who would have had every incentive to point out that his client was incapable of assisting with his defense—nor the trial court even hinted that Boyde was incompetent."). Trial counsel's decision not to declare a doubt as to Petitioner's competency appears all the more reasonable in the context of the trial court's subsequent assessment that there "was absolutely nothing in [Petitioner's] behavior to indicate . . . that [he] was not able to assist in his defense, that he was not competent." See Hunter, No. A144413, 2018 WL 360089, at *7. Petitioner has not offered any evidence to overcome the presumption that trial counsel's conduct was reasonable.

In addition, Petitioner has not shown that there is a reasonable probability that, but

for trial counsel's failure to declare a doubt, the result of the proceeding would have been different. See Strickland, 466 U.S. 694. Petitioner cannot establish prejudice because the trial court interacted with Petitioner at trial and did not believe him to be incompetent. See Hunter, No. A144413, 2018 WL 360089, at *5–7. As the California Supreme Court held in People v. Sattiewhite, 59 Cal.4th 446, 465 (2014), "[c]ounsel's assertion of a belief in a client's incompetence is entitled to some weight. But unless the court itself has declared a doubt as to the defendant's competence, and has asked for counsel's opinion on the subject, counsel's assertions that his or her client is or may be incompetent does not, in the absence of substantial evidence to that effect, require the court to hold a competency hearing." Therefore, even if trial counsel had declared a doubt as to Petitioner's competence, the trial court's contrary conclusion shows that proceedings would not have been suspended. Because the record indicates that the proceedings would have continued even if trial counsel declared a doubt as to Petitioner's competency, Petitioner cannot establish that he was prejudiced by trial counsel's failure to do so.

### b. Trial counsel's failure to raise a diminished actuality defense

Petitioner claims that his trial counsel was ineffective for failing to raise a diminished actuality defense, i.e., that counsel failed to present evidence that Petitioner suffered from a mental condition which prevented him from forming the specific intent required for conviction, at trial. Petitioner's claim fails because he does not overcome the strong presumption that counsel acted within the wide range of reasonable professional assistance, considered from counsel's perspective at the time.

To succeed under the first prong of the Strickland ineffective assistance of counsel standard, Petitioner must show that his trial counsel's performance was deficient. Petitioner has not shown that counsel's conduct fell outside of the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. Petitioner argues that trial counsel was ineffective because trial counsel had a duty to make reasonable investigations, did not, and therefore failed to make an informed decision on litigation strategy. Pet. at 27–28. Petitioner assumes, despite a lack of support in the record, that

trial counsel was aware of an additional psychiatrist's conclusion, based on an interview conducted two days after the incident at the DMV, that Petitioner was suffering from bipolar disorder. <u>See</u> Pet. at 27. Even assuming that trial counsel was aware of that conclusion, the doctor did not opine as to Petitioner's mental state on the day of the offense, nor whether Petitioner's mental condition at the time of the offense was so distorted as to negate the intent required for conviction. <u>See</u> <u>Hunter</u>, No. A144413, 2018 WL 360089, at *19. The information in that report therefore does not compel the conclusion that any reasonable attorney who read that report would pursue a diminished actuality defense.

Petitioner also points to his "prior history and the underlying facts of this case" as evidence that trial counsel's decision not to investigate Petitioner's mental illness and therefore not raise a diminished actuality defense was unreasonable. Pet. at 27. However, Petitioner's behavior at the DMV, while loud, aggressive and inappropriate, was not so "bizarre" that it clearly suggests that he did not understand his actions. Rather, Petitioner was focused on Stanton—the woman he threatened—and expressed his intent to punish her for her alleged wrongdoing. <u>Hunter</u>, No. A144413, 2018 WL 360089, at *4. The prosecution's evidence showed that Petitioner had harbored anger against Stanton for an extended period of time. Pet. Ex. B at 8. This evidence undermines the idea that Petitioner did not intend for Stanton to take his words as threats during the incident at the DMV. Given that evidence, this Court finds that a reasonable attorney could conclude that raising a diminished actuality defense would be a poor trial strategy and Petitioner's claim thus fails.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. And pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because it cannot be said that "reasonable jurists would find the district court's assessment of the constitutional claims

//

debruatable or wrong." See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED**.

Dated: November 29, 2018



CHARLES R. BREYER
United States District Judge